BENJAMIN W. SMITH, PETITIONER-RESPONDENT, v. THE DUNCAN COMPANY, RESPONDENT-PROSECUTOR.

REBECCA B. SMITH, PETITIONER-RESPONDENT, v. THE DUNCAN COMPANY, RESPONDENT-PROSECUTOR.

Submitted May 4, 1948—Decided August 9, 1948.

Before Justices BODINE and JACOBS.

For the petitioners-respondents, *A. Harry Moore* (*Thomas E. Lynch,* of counsel).

For the respondent-prosecutor, *O'Mara, Conway & Schumann* (*Edward J. O'Mara* and *Charles J. Gormley,* of counsel).

The opinion of the court was delivered by

JACOBS, J.   These cases are before the court on *certiorari* from judgments rendered by the Workmen's Compensation Bureau in favor of the petitioners-respondents and against the respondent-prosecutor.

The petitioner Benjamin W. Smith was employed by the respondent, The Duncan Company, as manager of its apartment house located at 2600 Boulevard, Jersey City, and his wife, the petitioner Rebecca B. Smith was employed as assistant manager.   Their duties included the purchase and ar-

rangement of holiday decorations for the apartment house. Annually, since 1936, they have purchased Christmas wreaths, holly, evergreens, and other decorations at florists and greenhouses. Early in December, 1943, they visited Duby's Florist Shop at Hackensack, where they had made previous purchases, and ordered about twelve wreaths. They were told that the wreaths could be picked up on the afternoon of December 22d, 1943.

On the morning of December 22d, 1943, the petitioners left Jersey City to pick up the wreaths at Duby's in Hackensack. After they left Jersey City they realized that they would arrive at Hackensack too early and thereupon, in the language of the petitioner Benjamin W. Smith, "We talked it over and decided we would go up along the highway to some greenhouses along the highway, and we would go as far as the Goshen Greenhouse in Goshen." His wife testified to the same effect, both stating that they had in previous years made purchases of incidental floral decorations, other than the wreaths, from the Goshen Greenhouse. While driving along the highway towards Goshen, they were in an accident which resulted in injuries to both petitioners, and in their hospitalization until February 19th, 1944.

In due course, each of the petitioners filed a claim for compensation in the Workmen's Compensation Bureau and the claims were consolidated for hearing. At the hearing, it was stipulated that the petitioners were in the employ of the respondent company and that they were injured as a result of an accident on December 22d, 1943. The respondent company contended, however, that the petitioners had deviated from their employment and that, as a result, the accident did not arise out of and in the course of their employment. Respondent acknowledges that to reach this result, the petitioners' testimony before the Bureau that they were on their way to the Goshen Greenhouse must be disbelieved. The respondent company relies on the following evidentiary items, introduced by it, as warranting disbelief of petitioner's testimony:

1. An accident report, by Mr. Cane, president of the respondent company, in which he stated that the petitioners

"were on their way to Hackensack, New Jersey, to procure some wreaths and decorations for The Duncan Apartments. The material had to be made up to order so they decided to take a ride to Goshen in the meantime, with the intention of stopping on their way back for the wreaths." Mr. Cane was not called as a witness and his report was introduced without objection. It is equivocal and may be read consistently with the petitioners' testimony that they were riding to Goshen to the Goshen Greenhouse and were planning to pick up the wreaths at Hackensack on their return.

2. An amended complaint in a proceeding before the Hudson County Court of Common Pleas by Benjamin W. Smith, as plaintiff, against Goshen Mile Track Association, Inc., was introduced to establish an assertion by the petitioner Benjamin W. Smith inconsistent with his testimony before the Bureau.

It is admitted that the automobile involved in the accident on December 22d, 1943, was owned by the Goshen Mile Track Association, Inc., of which petitioner Benjamin W. Smith is treasurer. He testified, before the Bureau, that on the date of the accident he was not engaged in any business on behalf of the Goshen Mile Track Association, although the amended complaint against the Goshen Mile Track Association, as defendant, does contain an allegation that the automobile was being driven in the defendant's business. He testified that he did not know either that suit had been started by his counsel against the Goshen Mile Track Association or what was in the complaint. Apart from the allegation in the amended complaint, there is nothing whatever to suggest that the automobile was being driven in the business of the Goshen Mile Track Association and the other evidence of the respondent company, clearly indicates the contrary. Thus, Mr. Cane's report and a statement prepared by Orville Ferrant, an investigator employed by the respondent company's insurance carrier, support the conclusion that the only business engaged in by petitioners on December 22d was for the respondent company. In the light of the foregoing circumstances, the unverified allegation in the amended complaint is not sufficient to warrant disbelief of the sworn testimony of peti-

tioner Benjamin W. Smith. *Cf. Wigmore on Evidence* (3d ed., 1940) (at *p.* 60), § 1066.

3. The statement prepared by the investigator Orville Ferrant, was introduced in evidence by the respondent company, and is relied upon by it, to establish that petitioners' trip to Goshen was "for pleasure" and not in the course of its business. The statement which is signed by petitioner Benjamin W. Smith, and bears an endorsement by petitioner Rebecca B. Smith that its contents are true, was prepared while petitioners were hospitalized and while petitioner Benjamin W. Smith was lying flat on his back "in traction." Both of the petitioners continued in the hospital for almost six weeks thereafter. Mr. Ferrant testified that although his visit was primarily as a paid investigator, it was also "in the nature of a social visit" since he had known petitioners over a period of years, and that he interviewed Mr. Smith "over a period of approximately three hours or perhaps slightly less."

Examination of the statement discloses inaccuracies and items which throw doubt as to whether it was "an uninspired voluntary statement, free from any suggestions from questioner." See *DiMieri* v. *Metafield, Inc.* (*Supreme Court,* 1941), 126 *N. J. L.* 484, 490; affirmed (*Court of Errors and Appeals,* 1942), 127 *Id.* 597. Thus, it states that the petitioners arrived at Duby's Florist Shop in Hackensack about 10:00 A. M. on the morning of December 22d, 1943. Petitioners' testimony before the Bureau directly establishes that they never arrived at Hackensack on December 22d, 1943, and no attempt was made before the Bureau to contravert this testimony. We are satisfied that the statement was in error on this point. Although it does not embody many remarks in quotations, it is significant that the investigator placed in quotes phrases designed to afford legal immunity to the respondent. Thus, Mr. Smith is quoted as saying that it was decided to take "a little ride for ourselves;" that the purpose of the trip to Goshen was "for pleasure and to say 'hello' to some friends."

The petitioners testified that they did not read the statement of January 11th, 1944, and that it does not truthfully set forth the happenings on the day of the accident. The

Deputy Commissioner who "had the advantage of personal observation of the witnesses and their demeanor and manner of testifying" (see *Schmidt* v. *Atlantic Refining Co.* (*Supreme Court,* 1944), 132 *N. J. L.* 196; *affirmed* (*Court of Errors and Appeals,* 1945), 133 *Id.* 39), believed their testimony and found that it was not discredited by the statement obtained by the paid investigator. See *Knapp* v. *C. F. Mueller & Co.* (*Supreme Court,* 1947), 135 *Id.* 230; *affirmed* (*Court of Errors and Appeals,* 1947), 136 *Id.* 186; *DiMieri* v. *Melafield, Inc., supra.* Under these circumstances we are disinclined to disturb his factual finding. See *Gilbert* v. *Gilbert Machine Works, Inc.* (*Supreme Court,* 1939), 122 *Id.* 533, 538, where Mr. Justice Heher aptly expressed the pertinent considerations as follows:

"Moreover, the credibility of the witnesses on the crucial point of inquiry was sharply in issue; and, in the appraisement of the evidence adduced before the Bureau, it is to be borne in mind that the deputy commissioner had the distinct advantage of personal observation of the witnesses. The demeanor of the witness is ofttimes a factor of major importance in determining the probative value and weight of his evidence. The tone of voice, the readiness or reluctance with which questions are answered, his reaction to surprise and unexpected inquiries, his carriage and expression, his seeming interest or lack of it, are all circumstances of consequence known only to the judicial officer in whose presence the witness testifies; and so, there is a natural hesitation on the part of the appellate tribunal, confined as it is to the written word, to disturb factual conclusions of the judicial officer to whom the evidence has been orally presented."

We find that the injuries suffered by the petitioners were the result of an accident that arose out of and in the course of their employment with respondent, The Duncan Company. The amount of the award by the Bureau is not questioned.

The writ of *certiorari* is dismissed.